UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YAAKOF KATZ, | ) |
| *Plaintiff,* | ) |
| -v.- | ) Civil Action No. 11-CV- 9411 (TPG) |
| SLICE & CO. FINE GOURMETY BRICK OVEN PIZZA, INC., CARDNET GROUP CORP., and METABANK | ) ) |
| *Defendant(s).* | ) |

## FACTUAL BACKGROUND

Plaintiff's claim arises from the use of an automated teller machine operated by defendant CARDNET GROUP CORP. at the restaurant owned by defendant SLICE & CO. FINE GOURMETY BRICK OVEN PIZZA, INC. located at  527 5th Avenue, New York, New York (the "ATM"). (*See* Affidavit of Abdulrahman Mubarez ("Mubarez Aff.") ¶ 2.)  At the time of its installation,  Abdulrahman Mubarez affixed to the ATM a sticker (the "On-Machine Notice" or "Fee Notice Sticker") indicating that the ATM charged a fee to customers.

Plaintiff alleges that on November 29, 2011, he incurred a $1.75 fee after withdrawing money from the ATM. (Am. Compl. ¶¶ 19.) He further alleges that at the time he used the ATM, he observed that the machine lacked an On-Machine Notice

1

disclosing that it would charge a fee.  (Am. Compl. ¶¶ 21 .)    Notably, plaintiffs do not allege that they were unaware that these fees would be charged, and their pleadings are conspicuously silent on whether plaintiff affirmatively agreed to pay these $1.75 fees when prompted by the ATMs' on-screen notifications.  Instead, plaintiff preemptively insist that they "need not prove that (he) sustained any actual financial loss, or that (he) relied upon the lack of mandatory disclosure as an inducement to enter into the transaction" in order to recover under the EFTA Pl.'s Mem. at ¶II 8) Plaintiff do not allege that they attempted notify anyone at that the On-Machine Notice was missing.  On December 5, 2011, Abdulrahman Mubarez learned that the ATM lacked an On-Machine Notice.  (*See* Mubarez Aff. ¶ 4.)  As a result, Mr. Mubarez immediately  attached the sticker. (*See  id.*)

Other than during the course of its replacement on the date and time indicated above, the Fee Notice Sticker was never noted as missing, nor was it ever removed by or at the direction of any of the Defendants or its authorized personnel.  Further, none of the defendants consented to or had knowledge of the Fee Notice Sticker's removal.  And the Plaintiff received the on-screen notice that a $1.75 fee would be charged at this ATM, that he proceeded with the transaction after reading the on-screen notice, and that he never notified any of the Defendants that the On-Machine Notice was missing until he filed his suit.

It is on these facts that Plaintiff seeks to certify the following class:

All persons who: 1) where charged a "terminal owner fee" at this ATM

operated by Defendants when such persons made an electronic fund transfer and/or balance inquiry where, 2) no notice indicating that such fee was to be charged was posted on the outside of the ATM machine, 3) on or after a date one year prior to the date of the filing of this action.

As discussed below, this Court should deny Plaintiff's motion.

## ARGUMENT

### I.    Standard for Class Certification.

To certify his proposed class, Plaintiff must meet the four requirements laid out in Rule 23(a) – numerosity, commonality, typicality, and adequacy – as well as the two requirements of Rule 23(b)(3) – predominance and superiority.  *See* Fed. R. Civ. P. 23; *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010).  Due to "the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Dukes*, 131 S. Ct. at 2550, Plaintiff bears the burden of demonstrating <u>actual</u>, and not merely presumed, conformity with all of these requirements.  *See id.* at 2552; *see also Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) ("[T]he court must conduct a rigorous analysis' to ensure the prerequisites of Rule 23 are satisfied.") (internal citation and quotation omitted).

As a result, in analyzing Plaintiff's motion for class certification, this Court is "not obligated to accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action."  *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 628 (N.D. Cal. 2005) (internal citation omitted).  Rather, "[a] class certification decision requires a thorough examination of the factual

and legal allegations." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2009) (internal citation omitted); *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005). This Court must therefore weigh the evidence concerning the Rule 23 requirements even if that analysis overlaps with the merits of Plaintiff's claims. *See Dukes*, 131 S. Ct. at 2551 (2011) ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

## II.   Plaintiff Cannot Meet the Rule 23(a) Requirements of Commonality, Typicality, or Adequacy of Representation.

### A.          Plaintiff cannot establish common questions of law or fact.

In both his Amended Complaint and his Memorandum of Law in Support of His Motion for Class Certification ("Memorandum"), Plaintiff asserts that the commonality requirement is satisfied based on two common questions of law and fact: 1) whether defendants violated the Electronic Funds Transfer Act (the "EFTA"), by failing to display the On-Machine Notice for a year prior to the filing of the summons and complaint on the appropriate measure of damages for this alleged violation. (*See* Am. Compl. ¶ 32; Pl.'s Mem. at ¶IV A.) But Plaintiff's two common questions are not "common" at all. As the United States Supreme Court recently emphasized, Rule 23(a)'s commonality requirement is not to be literally applied; if it was, "[a]ny competently crafted class complaint [would] . . . raise[] common 'questions.'" *Dukes*, 131 S. Ct. at 2551 (alteration in original) (quotation omitted). As a result, commonality is not established by generic questions such as "has a violation of EFTA occurred?" or "what damages are appropriate?" *See id.* Instead, a common question "must be of

such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to validity of each one of the claims in one stroke." *Id*.

When judged against this standard, Plaintiff cannot establish commonality. Plaintiff fails to allege in his Amended Complaint that each putative class member withdrew money from the ATM at a time when the On-Machine Notice was missing. Even if he did, he provides no evidence to support this claim. He affidavit fails to provide any evidence whether the sticker wasn't there prior to him using it and on any day after he performed his transaction at the ATM.

In other words, Katz's purported common question depends upon his unsubstantiated belief that his experience is identical to that experienced by every other putative class member. Katz simply assumes that because the Fee Notice Sticker was allegedly missing at the time of his ATM transaction on November 29, 2011, it was also missing during each and every one of the other transactions that occurred within the year of filing the complaint. Whether this is true is wholly dependent on evidence that will vary from class member to class member – evidence that is not common at all. As the Supreme Court instructed in *Dukes*:

> What matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers. *Dukes*, 131 S. Ct. at 2551 (alteration and quotation omitted) (emphasis in original).

In fact, in his Memorandum Plaintiff concedes that a Fee Notice Sticker was

later present on the ATM (*see* Pl.'s Mem. at 11), not only demonstrating the overbreadth of his proposed class definition, but also underscoring the individualized evidence necessary to establish a violation of EFTA in this matter.    If the Fee Notice Sticker was present at the filing of the complaint, as the undisputed evidence shows, then it only begs the question of how Plaintiff could demonstrate—through common evidence— that it wasn't present on any date. *See Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 407 (M.D. Fla. 2004) ("A determination that E*Trade failed to meet the EFTA notice requirements with regard to Miller does nothing to resolve the claims of Polo or of the users of the other 15,000 ATMs.").

Therefore, even if Plaintiff's allegation with regard to his own experience is true- that the Fee Notice Sticker was not present when he used the machine on November 29, 2011 there is no allegation, much less any proof, that each one of the putative class members also did not receive the required On-Machine Notice, which is what Plaintiff must present in order to show a common question amongst the class.[1]  Accordingly, Plaintiff cannot meet Rule 23(a)'s commonality requirement, and his motion for class certification should be denied on that basis alone.

### B. Plaintiff's claims are not typical of the class he seeks to represent.

As with his claim of commonality, Plaintiff asserts that his claims are typical of the class because his claim arises "from Defendant charging a $1.75 transaction fee while failing to comply with EFTA notice requirements."  (Pl.'s Mem. at 4 (c); *see*

---

[1] At best, the only common question even potentially susceptible to class wide proof is whether the On-Machine Notice was present between November 28, 2011 and December 5, 2011, the latter being the date on which the On-Machine Notice was reapplied.

*also* Am. Compl. ¶ 29-30.)   But as discussed above, Plaintiff lacks any basis on which to make such a sweeping assertion, once again undermining his attempt to establish Rule23(a)'s typicality requirement.   Again, as the Supreme Court observed in *Dukes*:

> We have previously stated . . . that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Dukes*, 131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157-58 n.13).

        1.    <u>Plaintiff seeks actual damages and therefore must show detrimental reliance.</u>

Plaintiff's claim that the damages he seeks to recover are typical of those damages available to putative class members also lacks merit.   Although Plaintiff purports to seek recovery of both actual and statutory damages under EFTA, he lacks any legal basis on which to recover actual damages. Plaintiff was fully aware that he would be charged a $1.75 fee because of the on-screen notice provided to him, yet he knowingly proceeded to complete the transaction.

Under these circumstances, Plaintiff cannot demonstrate the detrimental reliance required to recover actual damages under EFTA.   *See, e.g.*, *Voeks v. Pilot Travel Ctrs.*, 560 F. Supp.2d 718, 724 (E.D. Wis. 2008) (hereafter "*Voeks*") ("Therefore, this Court views as correct that line of cases which point out that a plaintiff must plead and prove detrimental reliance to establish actual damages [under EFTA]."); *Brown v. Bank of America*, 457 F. Supp.2d 82, 90 (D. Mass. 2006)

EFTA]."); *Brown v. Bank of America*, 457 F. Supp.2d 82, 90 (D. Mass. 2006) (holding that plaintiffs' agreement to proceed with the transaction after receiving on-screen notice of a fee broke "the causal link between an ill-placed decal and monetary loss necessary to recover actual damages under EFTA"); *Polo*, 232 F.R.D. at 408; *Stiltz v. Standard Bank & Trust Co.*, 2010 WL5158108, at * 4 (N.D. Ill. Dec. 14, 2010); *Stiltz v. Global Cash Network, Inc.*, 2010 WL 3975588, at *5 (N.D. Ill. Oct. 7, 2010); *Muchnik v. Union Credit Bank*, 2009 WL 3012811, at *1 (S.D. Fla. Sept. 16, 2009) ("Payment of an ATM fee, however, is not actual damages under the EFTA unless the plaintiff pleads and eventually proves detrimental reliance on a deficient notice."); *see also Martz v. PNC Bank, N.A.*, 2006 WL 3840354, at *5 (W.D. Pa. Nov. 30, 2006) ("The few reported cases that have discussed the actual damages provision of EFTA have found that to recover actual damages, a plaintiff must establish causation of harm in the form of detrimental reliance.").

In addition to conflating liability and the corresponding remedy, Plaintiff's theory of actual damages also undermines Congress's attempt to provide plaintiffs with a baseline remedy under the EFTA. Again, as *Voeks* reasoned:

Another consequence of treating the payment of fees as 'actual damages' instead of as part and parcel of the liability equation, is to ignore the import of § 1693m(a)(2)(A) as the provider of remedies to the consumer for improperly noticed assessments. Section 1693m(a)(2)(A) can only be read as an effort by Congress to provide a base-line remedy or relief for these types of transactions. This section is a recognition that, in individual actions, the

transaction fee will usually be nominal.... This recognition is reflected in the amount of recovery for such nominal expenditures made by the consumer; $100-$1,000 per individual transaction.... Section 1693m(a)(1) on the other hand provides remedies to the injured consumer for "actual damages" that are over and above the statutory penalties charged in § 1693(m)(2)(A). To read the assessment/payment of a nominal fee pursuant to an improper notice as actual damages under § 1693m(a)(1) is to reduce the significance of (a)(1) as a larger remedy and ignore (a)(2)(A)'s purpose" as a baseline.

*Id.*

The conclusion that recovery of actual damages under EFTA requires a showing of detrimental reliance is buttressed by the Truth In Lending Act ("TILA"), another consumer rights statute with a damages provision identical to that found in the EFTA. *Compare* 15 U.S.C. § 1640(a)(1) *with* 15 U.S.C. § 1693m(a)(1). The Eighth Circuit Court of Appeals, as well as every Circuit Court having an opportunity to address the issue, has required detrimental reliance to establish actual damages under TILA. *See Peters v. Jim Lupient Oldsmobile Co.,* 220 F.3d 915, 917 (8th Cir. 2000) (requiring a showing of proximate causation and adopting a four-prong reliance test for establishing actual damages); *see also Vallies v. Sky Bank,* 591 F.3d 152 (3d Cir. 2009) [2]; *United States v. Petroff-Kline,* 557 F.3d 285, 297 (6th Cir. 2009) ("[A]ctual

---

[2] Curiously, Plaintiff cites *Vallies* for the proposition that "[r]ecent TILA cases have recognized the differences between the substantive conduce proscribed by TILA's disclosure provision and EFTA § 1693b(d)(3)(C). (Pl.'s Mem.

damages require a showing of detrimental reliance."); *McDonald v. Checks-N-Advance, Inc.*, 539 F.3d 1186, 1192 (9th Cir. 2008); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028; *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 434-40 (5th Cir. 2000); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000). Because, as one court noted, "Congress would [not] have different intended meanings for identical statutory language contained in similar statutes," *Johnson v. W. Suburban Bank*, 225 F.3d 366, 378-379 (3d Cir. 2000), there is no reason detrimental reliance should not also be required to recover actual damages with respect to the EFTA. *See Brown*, 457 F. Supp.2d at 90.

In sum, Plaintiff's invitation to treat the $1.75 ATM fee (a fee that he willingly paid after receiving notice of that fee) as actual damages so that he may avoid having to show detrimental reliance should be rejected. The overwhelming majority of courts have reached a contrary conclusion, and correctly so, as Plaintiff's theory conflates liability and damages under the EFTA, and also undermines the remedial scheme envisioned by Congress.

### 2. Plaintiff's lack of detrimental reliance precludes him from recovering actual damages, making his claims atypical of the class.

Plaintiff seeks to represent class members who may claim they suffered <u>both</u> statutory damages and actual damages. Plaintiff does not share the same interest as these class members, as he does not contend that the on-screen fee notice was deficient,

---

At 13, n.2). The court in *Vallies, however*, correctly noted that "actually damages for violations of EFTA's "notice" provisions , which are analogous to violations of TILA disclosure provisions, <u>require a showing of detrimental reliance.</u>" See *Vallies*, 591 F.3d. at 161 (internal citations and quotations omitted) (emphasis added)

and he concedes that he opted to continue with the transaction even after receiving the on-screen notice. Because Plaintiff indisputably understood that the ATM would charge a fee prior to agreeing to the transaction, he cannot show detrimental reliance. *See, e.g., Muchnik*, 2009 WL 3012811, at *1 (plaintiff's decision to accept the transaction fee broke the causal chain between the alleged EFTA violation and the claim that plaintiff suffered actual damages). In contrast, some or all of the class members Plaintiff purports to represent may claim to have not seen the on-screen notice, and therefore detrimentally relied on the lack of an On-Machine Notice.

Without detrimental reliance, Plaintiff can only recover statutory damages, rendering his claim atypical of other class members who may demonstrate such reliance and therefore seek actual damages in addition to statutory damages.

**C.         Plaintiff is not an adequate representative.**

Plaintiff's inability to satisfy the commonality and typicality requirements of Rule 23(a) also renders him an inadequate class representative. A plaintiff with no actual injury who may only recover statutory damages does not "possess the same interest and suffer the same injury" as persons who may have suffered actual damage and injury, and there is no reason to trust that the former will adequately represent the interests of the latter. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal citation omitted); *see also Berger v. AXA Network, LLC*, 220 F.R.D. 316, 318 (N.D. Ill. 2004). Plaintiff suffered no actual damages because he cannot show detrimental reliance, and as such he lacks any meaningful incentive to pursue the claims

11

of absent class members who may not have seen an on-screen notice, and therefore may have a colorable claim for actual damages.

Plaintiff also cannot adequately represent the proposed class both because he has taken very little interest in, and because he lacks even basic knowledge of, this action.  In *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 568-69 (D. Minn. 2003), the Court found that the sole named plaintiff was not an adequate class representative because he was "confused about the action" and was "unfamiliar with his own complaint, his claim and the parties involved."  Although in his Memorandum Plaintiff professes his commitment to representing the class and claims a full understanding of his responsibilities (*see* Pl.'s Mem. D), in reality, Plaintiff knows very little about this suit and has taken a very passive role in pursuing it.

III.    Plaintiff Cannot Demonstrate That Certification Is Proper Under Rule 23(b)(3).

For Plaintiff to certify a class pursuant to Rule 23(b)(3), he must show 1) that questions of law and fact common to members of the class predominate over questions affecting only individual class members, and  2) that the class action is the superior method to adjudicate his EFTA claim.  See Fed. R. Civ. P. 23(b)(3); Avritt, 615 F.3d at 1029. Even if Plaintiff can demonstrate that his claim meets the Rule 23(a) prerequisites (which for the reasons discussed above he cannot), class certification should still be denied under the "far more demanding" requirements of Rule 23(b)(3). See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997).

A.      Common questions of law and fact do not predominate over questions affecting only individual class members

"The Rule 23(b) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005) (quoting Amchem Prods., 521 U.S. at 623). At its core, Rule 23(b)(3)'s predominance requirement asks whether a plaintiff can establish the defendant's liability with common evidence. Avritt, 615 F.3d at 1029. "When class-wide proof is dispositive of an element of the cause of action, there is no need for individualized inquiry into the position of each class member of that issue." Atwood v. Johnson, Rodenburg & Lauinger, PLLP, 2011 WL 3274084, at *2 (D. Minn. Aug. 1, 2011) (quoting Avritt, 615 F.3d at 1029). By contrast, if the proposed class members must "present evidence that varies from member to member then it is an individual question and unsuited for resolution under Rule 23(b)(3)." Id.

Here, because Plaintiff seeks both actual damages and statutory damages on behalf of himself and his class, individual fact questions predominate. As discussed above, to establish both a violation of EFTA's on-machine requirement, as well as a class member's entitlement to actual damages, the following questions would have to be answered for each and every putative class member:

1) whether the ATM had an On-Machine Notice on the date of the class member's transaction;

2) if the ATM was missing the On-Machine Notice, whether the class

member saw that the ATM lacked an On-Machine Notice;

3) whether the class member saw the on-screen notice prior to completing his or her transaction;

4) whether the class member would have proceeded with the transaction had the On-Machine Notice been present and correct; and

5) whether the class member actually paid the fee without any subsequent reimbursement from his or her own financial institution. *See Polo*, 232 F.R.D. at 408; *see also Martz*, 2007 WL 2343800, at *7.

In fact, this final inquiry would necessarily entail additional consideration of the terms and conditions of each class member's account agreement with his or her financial institution, as several well-known institutions provide some form of reimbursement to their customers for foreign ATM surcharges. Plaintiff himself fails to assert that he is unaware of whether he received reimbursement from his financial institution. Moreover, any fee imposed on individuals using an Electronic Benefit Transfer ("EBT") card issued by the State of New York is exempt from regulation under EFTA. *See* 15 U.S.C. § 1693b(d)(2). As such, these individuals could not be members of the putative class Plaintiff seeks to represent.

Because individual fact issues going to the heart of this claim would completely dwarf any common questions—if any valid common questions even exist—Plaintiff's motion for class certification should be denied on this basis as well.

**B.**         **A class action is not the superior method to adjudicate Plaintiff's**

**claim.**

Plaintiff also cannot establish that a class action is the superior way to adjudicate this claim. *See* Fed. R. Civ. P. 23(b)(3). First, the class members have a lower prospect for recovery compared to if they brought their claims individually. Second, the extreme difficulty, if not impossibility, of identifying all the class members will make this case unmanageable as a class action. For these reasons, bringing these claims on an individual basis is the far superior method of adjudication. Indeed, only a few months ago, Judge Magnuson concluded as much and therefore denied a named plaintiff's attempt to certify a class arising out of the same exact alleged EFTA violation involved here, namely, the failure to display an On-Machine Notice. *See generally Nadeau v. Wells Fargo Bank, Nat'l Ass'n,* 2011 WL 1633131(D. Minn. April 26, 2011).

### 1. Class members would likely recover less in a class action.

In considering whether class treatment is superior, it is appropriate for the Court to "compare the possible alternatives [to treatment as a class action] to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." Hamilton v. O'Connor Chevrolet, Inc., 2006 WL 1697171, at *11 (N.D. Ill. June 12, 2006) (quoting 7A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1779 (3d ed. 2005)). "The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action." Amchem Prods., 521 U.S. at 617 (internal citation

omitted). When an EFTA claim is brought as an individual suit, in addition to actual damages, a successful plaintiff is entitled to recover minimum statutory damages of $100, and may actually recover as much as $1,000. See 15 U.S.C. § 1693m(a)(2)(A). But if the suit proceeds as a class action, statutory damages are limited to an amount determined by the court, and class members are not guaranteed a minimum recovery. See 15 U.S.C.§ 1693m(a)(2)(B). Further, the maximum statutory damages a class can receive will be the lesser of $500,000 or 1 percent of the defendant's net worth. See id. Plaintiff's only claim for actual damages is the $1.75 fee he allegedly paid to use the ATM[3]. An on-screen notice with the fee appeared, and that despite seeing this notice, he still conducted the transaction. The small amount of claimed actual damages, and the fact there were on- screen notices, means that if this suit was certified as a class action, a court would likely find any statutory damages to be *de menimis*, <u>if it found and damages as all.</u> See Nadeau, 2011 WL 1633131, at *5[4] In contrast, "a *de minimis* recovery is not possible in an individual action, in which the consumer is guaranteed at least $100, and up to $1,000." *Id.* So while successful class members in this case might receive a *de minimis* amount of statutory damages in a class action, they would be guaranteed at least $100 if they brought their claims individually and succeeded on the merits. *See Jones*, 215 F.R.D. at 570 (D. Minn. 2003) (whether the class recovery would be *de minimis* is an appropriate consideration for the court in

---

[3] Defendants of course rejects the notion that the $1.75 fee even constitutes actual damages under EFTA.

[4] Note that Defendants has acted in good faith and as such, intends to bring a motion for summary judgment on this issue that will eliminate any damages, statutory or actual. *See* 15 U.S.C. § 1693m(d).

determining whether to certify a class); *see also Atwood*, 2011 WL 3274084, at *3.[5] In contrast, "a *de minimis* recovery is not possible in an individual action, in which the consumer is guaranteed at least $100, and up to $1,000." *Id.*   So while successful class members in this case might receive a *de minimis* amount of statutory damages in a class action, they would be guaranteed at least $100 if they brought their claims individually and succeeded on the merits.   *See Jones*, 215 F.R.D. at570 (D. Minn. 2003) (whether the class recovery would be *de minimis* is an appropriate consideration for the court in determining whether to certify a class); *see also Atwood*, 2011 WL 3274084, at *3.

### 2. The difficulty in identifying individual class makers make this class unmanageable.

In analyzing Plaintiff's proposed Rule 23(b)(3) class, it is also proper for the Court to consider the "likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3)(D).   The Court should therefore consider the problems and costs of identification the will inevitably arise from locating the class members. *See Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) (noting the "Sisyphean task of identifying" potential class members and the burden on the court of having to do so). Identifying class members is crtical because it "insures that those actually harmed by defendant's wrongful conduct will be the recipients of the relief eventually provided." *Simer*,   661 F.2d at 669.

---

[5] In similar vein, the Seventh Circuit Court of Appeals recently affirmed a denial of class certification by noting in part that "[a] representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests." In re Aqua Dots Prods. Liab. Litig., No. 10-3847 (7th Cir. Aug. 17, 2011), available at http://www.ca7.uscourts.gov/tmp/AK0XD715.pdf.

Difficulty in doing so weighs against class certification. *See Nadeau, 2001* WL 1633131, at *5.

Here, it is nearly impossible to identify the putative class members.  As a result, the only information Defendants can generate regarding the transactions at issue is a report setting forth the consumer's sixteen-digit Primary Account Number ("PAN") associated with each transaction.  The PANs then link with several networks, which serve as intermediaries between Defendants and the  customers' financial institutions for any disputes or issues that arise. However, Defendant does not, and cannot, know which putative class member is matched up with each PAN. Therefore, contrary to Plaintiff's assertions, even with the provided PANs, he still will not know the corresponding putative class members unless the financial institutions agree to identify them.

Even assuming Plaintiff somehow managed to match the PAN with the sponsoring financial institution, each institution still would have to be willing to identify the card holder, and then disclose that card holder's personal financial information. Given the obvious privacy and security concerns, it is highly unlikely that such information would be freely handed over in the absence of a Court-issued subpoena, as doing so may violate the Gramm-Leach-Bliley Act and similar state privacy laws.   *See* 15 U.S.C. § 6802(a) (generally prohibiting  disclosure  of customer  financial  data  in  the  absence  of  the customer's consent).  Thus, for Plaintiff to obtain this information, the Court would need to  issue  subpoenas  to potentially  hundreds  of  financial  institutions,  which  will "undoubtedly result in

prolonged litigation, and even then it is likely that a large number of potential class members will be left out." *Mowry v. JP Morgan Chase Bank, N.A.*, 2007 WL 1772142, at *6 (N.D. Ill. June 19, 2007) (holding that EFTA case was not manageable as a class action because of the difficulty in identifying the class members). These tremendous problems in identifying potential class members renders class treatment unmanageable, and Plaintiff's motion should therefore also be denied on this basis. *See e.g., id.; Martz*, 2007 WL 2343800, at *8 (finding EFTA class not superior given serious difficulties in identifying putative class members).

### 3. EFTA provides ample incentive to bring individual actions.

In determining whether to grant class certification, this Court should also consider the fact that the EFTA has provisions that assure the class members' rights will be upheld even without class treatment. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her own rights." *Amchem Prods.*, 521 U.S. at 617 (internal citation and quotation omitted). EFTA, however, has built in incentives that encourage and reward people who bring their claims individually. As discussed above, successful EFTA litigants are guaranteed at minimum $100 in statutory damages, and can receive as much as $1,000, thus providing them with ample motivation to act as private attorneys general. *See* 15 U.S.C. § 1693m(a)(2)(A); *Atwood*, 2011 WL 3274084, at *3; *Gardner v. Equifax Info. Servs., LLC,* 2007 WL 2261688, at *6 (D. Minn. Aug. 6, 2007) (availability of fees and costs is sufficient incentive for analogous individual FCRA actions); *Hamilton*, 2006 WL

1697171, at *11 (denying Rule 23(b)(3) class certification because individual plaintiff's ability to recover attorneys fees and costs provides substantial incentives to bring individual suits).The statute also allows successful plaintiffs to collect reasonable costs and attorneys fees, making the prospect of small recoveries unlikely to dissuade lawyers from taking these cases.  *See id*.  Therefore, the problems that class actions were created to remedy do not arise with respect to EFTA claims.

## CONCLUSION

According to Magistrate Bloom of the Eastern District of New York, Plaintiff's action is among the hundreds of lawsuits filed across the country in a transparent attempt to capitalize on the EFTA's statutory damages. *Archibold v. Tristate ATM, Inc.* (E.D.N.Y., 2012 at 8) Through serial transactions conducted at ATMs that lack EFTA-required signage (whether due to the ATM operator's failure or to the strategic removal of the physical notice), plaintiff's can manufacture clams, file suit in federal court, and either collect the statutorily-mandated damages and fees or exact a settlement offer.  *See id.* Plaintiff has filed at least six lawsuits regarding non-compliant lawsuits in the New York area. See No. 12-cv-152; No. 12-cv-146; No. 12-cv-149; No. 12-cv-151; No. 11-cv-9391; No. 12-cv-269.  As one lawmaker explained, "some individuals have seen the potential to make a quick buck off a frivolous claim and have begun to remove stickers from ATMs across the country, thereby placing financial institutions and merchants out of compliance [with the EFTA]" 158 Cong. Rec. H4665 (daily ed. July 9, 2012) (statement of Rep. Luetkemeyer).

In recognition of the potential for abuse created by the EFTA's fee notification

provision, on July 9, 2012, the United States House of Representatives passed legislation to amend the EFTA to eliminate the requirement that ATM operators post fee notification "on or at" the ATM, thereby limited the fee disclosure requirement to the screen of the ATM. See H.R. 4367, 112 Cong. (2012); see also 158 Cong. Rec H4665 (daily ed. July 9, 2012) (statement of Rep. Luetkemeyer) ("The premise of this bill is simple; to eliminate an outdated and unnecessary regulation burden facing merchants and financial institutions while continuing to ensure consumer protections for all ATM users through required on-screen fee disclosure.").

Because Plaintiff cannot meet the requirements articulated under Rule 23, U.S. Bank respectfully requests that this Court deny his motion for class certification.

Dated: November 20, 2012

/s Frederic R. Abramson_____
Frederic R. Abramson, Esq. (FA3918)
Law Office of Frederic R. Abramson
*Attorney for Defendant(s)*
160 Broadway, Ste. 500
New York, NY 10038
fabramson@abramsonlegal.com
(212) 233-0666

*Filed and Served*
*via CM/ECF*

# CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2012, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or Southern District's Local Rules and/or the Southern District Rules on Electronic Service upon the following parties and participants:

Shimshon Wexler, Esq.
The Law Offices of Shimshon Wexler, PC
2710 Broadway, 2Flr
New York, NY 10025
gwexleresq@gmail.com
(212) 760-2400